IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| HARRIET SEGAL, | : | |
| Plaintiff, | : | Civil No. 19-8839 (RBK) |
| v. | : | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Plaintiff Harriet Segal's appeal (Doc. 1) from the final decision of the Commissioner of Social Security ("the Commissioner") denying Plaintiff's claim for Disability Insurance Benefits ("DIB") under the Social Security Act. For the reasons expressed herein, this case is REMANDED for further administrative proceedings consistent with this Opinion.

**I.   PROCEDURAL BACKGROUND**[1]

Plaintiff filed an application for DIB on November 25, 2014, alleging a disability onset date of July 10, 2014.[2] (R. 10.) After her claim was denied at the initial level, she requested a hearing before an Administrative Law Judge ("ALJ"). (R. 156–57.) On January 11, 2018, ALJ

---

[1] Because the record is voluminous, the Court sets forth only those facts necessary for context and relevant to the issues upon appeal. The Court cites to the administrative record as "R." Background facts and medical history are set forth in a separate section below.

[2] In her appeal of the Commissioner's decision, Plaintiff amends her alleged onset date to July 7, 2014. (Doc. 19 ("Pl. Br.") at 4.)

1

Paul R. Armstrong presided over a hearing during which he heard testimony from Plaintiff and a Vocational Expert ("VE"). (R. 58–104.) The hearing was held via videoconferencing, with Plaintiff located in New Jersey and the ALJ located in Chicago, Illinois. (R. 10.) On January 30, 2018, the ALJ issued an unfavorable decision. (R. 7–23.) Plaintiff requested review of the ALJ's decision, which the Appeals Council denied on January 23, 2019, making the ALJ's decision the final decision of the Commissioner. (R. 1–6.) Plaintiff appeals this decision now.[3]

## II.     LEGAL STANDARD

### A.  Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses an established five-step evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520.

For the first four steps of the evaluation process, the claimant has the burden of establishing her disability by a preponderance of the evidence. *Zirnsak v. Colvin*, 777 F.3d 607, 611–12 (3d Cir. 2014). First, the claimant must show that she was not engaged in "substantial gainful activity" for the relevant time period. 20 C.F.R. § 404.1572. Second, the claimant must demonstrate that she has a "severe medically determinable physical and mental impairment" that lasted for a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. § 404.1509. Third, either the claimant shows that her condition was one of the Commissioner's listed impairments, and is therefore disabled and entitled to benefits, or the analysis proceeds to step

---

[3] On December 31, 2019, Plaintiff's separate application for DIB was approved, and the Commissioner has recognized Plaintiff as disabled since May 1, 2018. (Doc. 19-1 at 1.) Thus, Plaintiff's appeal here concerns DIB for the period of July 7, 2014 through May 1, 2018. (Pl. Br. at 4.)

2

four. 20 C.F.R. § 404.1420(a)(4)(iii). Fourth, if the condition is not equivalent to a listed impairment, the ALJ must assess the claimant's residual functional capacity ("RFC"), and the claimant must show that she cannot perform her past work. 20 C.F.R. § 404.1520(a)(4)(iv); 20 C.F.R. § 404. 1520(e). If the claimant meets her burden, the burden shifts to the Commissioner for the last step. *Zirnsak*, 777 F.3d at 612. At the fifth and last step, the Commissioner must establish that other available work exists that the claimant can perform based on her RFC, age, education, and work experience. *Id.*; 20 C.F.R. § 404.1520 (a)(4)(v). If the claimant can make "an adjustment to other work," she is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(v).

### B. Review of the Commissioner's Decision

When reviewing the Commissioner's final decision, this Court is limited to determining whether the decision was supported by substantial evidence, after reviewing the administrative record as a whole. *Zirnsak*, 777 F.3d at 610 (citing 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Courts may not set aside the Commissioner's decision if it is supported by substantial evidence, even if the court "would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

When reviewing a matter of this type, the Court must be wary of treating the determination of substantial evidence as a "self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The Court must set aside the Commissioner's decision if it did not take into account the entire record or failed to resolve an evidentiary conflict. *See* S*chonewolf v. Callahan*, 927 F. Supp. 277, 284–85 (D.N.J. 1997) (citing *Gober v. Matthews*, 574 F.2d 772, 776

3

(3d Cir. 1978)). Evidence is not substantial if "it really constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114). A district court's review of a final determination is a "qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Kent*, 710 F.2d at 114.

## III.  FACTUAL BACKGROUND

Plaintiff was born on May 27, 1960, and was 54 years old on her alleged disability onset date. (Pl. Br. at 8.) She has a high school education, and consistently worked in the years leading up to her alleged onset date. (*Id.*) From 2003 to 2009, she worked as a "Dual Rate Supervisor/Slot Attendant" at Taj Mahal Casino, and from 2010 to 2014 as a "Bus Greeter" at Showboat Casino. (*Id.*) Plaintiff reports that this work "involved constant walking and standing," carrying objects weighing up to 40 pounds, and "writing/handling small objects." (*Id.* at 9.) Prior to 2003, Plaintiff worked in various administrative jobs. (R. 85.)

Plaintiff states that her most recent position as bus greeter required her to run around, climb steps onto buses, and distribute coupons to those on the bus. (R. 71–72.) She states that her medical issues forced her to quit this position because she became unable to use her hands to separate coupon papers from one other or hold smaller objects without dropping them, and she could not walk more than very short distances without stopping. (Pl. Br. at 9; R. 81.) At the time she left this position, Plaintiff states she was suffering from a "severe episode of viral demyelinating myelitis which left her with residual nerve damage, difficulty walking, difficulty using her arms and hands, shaking, swelling and shaking in her hands, knees and ankles causing difficulty with balance, standing and walking with burning pain in her feet." (Pl. Br. at 9.)

4

In her daily living activities, Plaintiff states that she requires help with everyday tasks such as household chores, grocery shopping, and laundry. (Pl. Br. at 10.) She fears going out alone because she has fallen in the past. (*Id*.) She states that she can walk to a store that is four blocks away, but needs to stop and rest numerous times during her trip as she cannot walk more than twelve feet without assistance. (*Id*. at 18.) She reports numbness in her legs if she sits for too long, and states that she needs a cane to walk. (*Id*. at 18.) Plaintiff states that she visits the library located next to her doctor in order to use the computer, as she does not own one herself, but that she cannot type for more than ten minutes due to pain in her hands. (*Id*. at 16–17.)

Plaintiff prepares meals at home, but states that she has trouble holding objects such as cups and plates, and needs to use a larger object such as a Frisbee in order to transport small items from the kitchen. (*Id*. at 16.) She cannot use the oven due to her inability to carry objects reliably. (*Id*. at 17.) She states that she has trouble dressing herself because her hands are too numb to feel the edges of her clothing. (*Id*.) She also has trouble gauging the temperature of water. (*Id*.) She reports that she needs to sit in the shower, and needs to use a handrail to get on or off the toilet due to poor balance. (*Id.* at 18.)

### A. Medical History

Plaintiff alleges an extensive history of medical ailments including: "chronic transverse myelitis and demyelinating disease causing permanent nerve damage, motor, sensory and reflex loss in upper and lower extremities," inflammatory arthritis, psoriasis, sensory neuropathy, cervical disc herniation, "post-surgical left foot changes with plates and screws," edema, HPV virus, diabetes, hypertension, and hypothyroidism. (Pl. Br. at 6.) Plaintiff also states that she has major depressive disorder and anxiety disorder. (*Id*.)

Plaintiff was hospitalized on several occasions for her medical issues. On July 11, 2014, she was hospitalized for uncontrolled hypertension and diabetes, difficulty with using her hands, infection in her left toe, and decreased range of motion. (R. 416.) On August 1, 2014, Plaintiff was hospitalized for numbness, weakness, and tingling sensations in her arms and hands. (R. 426–27.) During that visit, she was diagnosed with bilateral hand and arm paresthesia, weakness, and stiffness. (R. 421–424.) During one hospitalization, Plaintiff became unsteady and fell, fracturing one of her fingers. (R. 441.)

After these hospitalizations, Plaintiff began regularly seeing various doctors at Atlanticare Healthplex Ambulatory Clinic; she was examined by Drs. Lalith Premachandra, Brian Tran, Asiya Hussain, Tarandeep Kaur, Brian Timms, and Jessica Roeske on multiple occasions. (R. 421–99.) The Court summarizes relevant findings from these visits here.

On August 8, 2014, Dr. Tran noted that Plaintiff was having trouble gripping her insulin because of weakness in her hands. (R. 438). Dr. Roeske also saw Plaintiff; she agreed with Dr. Tran's findings regarding Plaintiff's hands and added that Plaintiff likely had transverse myelitis. Dr. Roeske stated that Plaintiff was feeling better after her discharge from her recent hospitalization, but noted that her arms were still numb. (R. 441.)

On August 28, 2014, Dr. Hussain noted continuing pain and loss of feeling in Plaintiff's hands, abnormal balance, and decreased sensation in forearms. (R. 448.) She reported that Plaintiff's numbness, tingling, and weakness had improved with a course of steroid therapy. (R. 448–450.) Dr. Lucienne Reid-Duncan added that Plaintiff had "sensory changes and gait and balance dysfunction." (R. 450.) On September 25, 2014, Dr. Premachandra observed that Plaintiff no longer had difficulty with her insulin, but that she had cervical cord compression and numbness in some fingers, as well as diminished grip strength. (R. 433–34.)

On January 12, 2015, Dr. Premachandra reported that Plaintiff could administer her insulin, but was unable to fully close her hands due to stiffness, several fingers were numb, and Plaintiff had decreased sensation in her arms from her fingers to her elbows. (R. 477–78.) Interpreting the results of a December 17, 2014 MRI, Dr. Premachandra observed that Plaintiff's myelitis was resolving, but that she had "pronounced central canal stenosis at C6-C7." (R. 479.) She noted that some symptoms were worsening. (*Id.*) Dr. Timms completed an addendum in which he reported that Plaintiff's symptoms of tingling and numbness in feet and knees had continued. (R. 480.) He stated that, despite near resolution of the myelitis, with Plaintiff's "known cervical spinal stenosis we need to get her back with neuro" to better evaluate her continuing symptoms. (R. 480–81.)

On February 10, 2015, Dr. Hussain noted that Plaintiff had "increased pain in her hands and weakness that is related to her cervical myelitis." (R. 473.) On May 11, 2015, Dr. Premachandra noted that Plaintiff was again having difficulty holding her insulin syringe, had decreased sensation from fingers to elbows, hand stiffness, and diminished grip strength. (R. 468.) She noted that the continuing issues with tingling and pain would require a neurological consult. (R. 471.)

On July 28, 2015, Plaintiff saw Dr. Yangala at Shore Physicians Group Center for Neurology for a neurological evaluation. (R. 491.) Dr. Yangala noted that Plaintiff's cervical spinal cord lesion had mostly resolved, but that she still had residual symptoms and deficits, including decreased touch in the hands and forearms. (R. 493–94.) Dr. Yangala recommended physical therapy and a follow-up MRI. (*Id.*)

On August 6, 2015, Dr. Kaur and Dr. Roeske examined Plaintiff. (R. 463–66.) The doctors noted that Plaintiff was in the process of beginning physical therapy.[4] (*Id.*) They reported that,

---

[4] Plaintiff underwent physical therapy at Care Center of South Jersey from August 5, 2015 until September 23, 2016. (R. 504–575.) Her therapy focused on "gait and balance training and muscle strengthening." (Pl. Br. at 13.)

7

other than continuing numbness and tingling in in Plaintiff's upper extremities and severe pain in her neck, Plaintiff seemed to be doing well. (*Id.*)

On November 18, 2015, Plaintiff saw Dr. Wilchfort, an SSA medical consultant who completed an Atlantic City Medical Evaluation form. (R. 500.) Dr. Wilchfort observed that Plaintiff had difficulty getting up and off the examining table and that she had trouble squatting due to knee pain, but reported a normal gait. (R. 500.) He reported Plaintiff's pinprick sensation as normal, except for mild decrease in three fingers on her left hand, and found that she had a normal range of motion. (R. 500.) He concluded that, although she has some decreased sensation in her left hand, he does "not see any reason why she should not be able to work." (R. 501.) He then stated that she does, however, "have morbid obesity, has extensive psoriasis and that may impair her ability to function," and added that her "problems of diabetes and hypertension need to be further evaluated." (R. 501.)

On May 2, 2017, Plaintiff again saw Dr. Yangala at Shore Physicians Group Center for Neurology. (R. 577.) Dr. Yangala noted that Plaintiff "still has parasthesias in arms and legs and gait unsteadiness" and "uses a cane to ambulate." (R. 579.) Dr. Yangala reported that Plaintiff's extremities had normal bulk, strength, and tone, but noted that she had decreased touch in the hands and forearms, and that her gait is somewhat unsteady. (R. 580.) Dr. Yangala concluded that Plaintiff's post viral demyelinating myelitis "has left some residual symptoms and deficits for her, and that Plaintiff "continues to have significant neurological deficits with gait ataxia and disabling parasthesias." (R. 580.) Dr. Yangala also noted Plaintiff's "significant disc herniation and compression" and stated that Plaintiff may want to consider surgery. (R. 581.)

**B. The ALJ's Decision**

After holding a hearing during which Plaintiff and a Vocational Expert ("VE") gave testimony, the ALJ issued his decision. (R. 10–18.) At step one, he found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of July 10, 2014. (R. 12.)

At step two, the ALJ found that Plaintiff had several severe impairments, including: "residuals of cervical spine lesion, degenerative disc disease, diabetes, and obesity." (R. 12.) He noted that Plaintiff had mental impairments including depression and anxiety, but found that they were not severe because they "do not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities." (R. 13–14.) At step three, the ALJ found that none of Plaintiff's impairments met or equaled the severity of any listed impairments that would result in a finding of disability. (R. 14–15.) He stated that he "considered the adverse effects of [Plaintiff's] obesity on the severity of [her] other impairments and on the extent of [her] functional limitations," but found that Plaintiff's obesity did not aggravate her "other impairments so much as to result in listing-level severity." (R. 15.)

The ALJ then formulated Plaintiff's RFC, determining that Plaintiff could:

perform light work as defined in 20 CFR 404.1567(b) where the [Plaintiff] lifts or carries 20 pounds occasionally and 10 pounds frequently, stands or walks for six of eight hours during the workday, and sits for six of eight hours during the workday.

(R. 15.) In formulating this RFC, the ALJ stated that he considered the medical evidence in the record, as well as Plaintiff's subjective complaints. (R. 16.)

Evaluating the medical evidence, the ALJ stated that "the record shows stable motor functioning and a positive response to treatment." (R. 16.) He noted that examinations from July and August 2014 showed evidence of strength loss and decreased sensation, and that Plaintiff's MRIs showed disc herniation and transverse myelitis. (R. 16.) He stated that a December 2014 MRI showed that Plaintiff's myelitis was resolving, and that in January 2015, Plaintiff showed

9

stable degenerative changes and mild to severe stenosis, but had bone marrow and soft tissues within normal limits. (R. 16.) He noted that May and August 2015 examinations "showed full or mildly diminished strength," and that a November 2015 examination showed "full range of motion, a normal gait, and normal sensation other than mildly diminished sensation in three of her left hand fingers." (R. 16.) Finally, he noted that in May 2017, Plaintiff "had an ataxic gait and some swelling," but "normal motor bulk, strength and tone, equal reflexes and intact coordination." (R. 17.) He stated that Plaintiff's cervical cord lesion "had mostly resolved and left some residual deficits." (R. 17.)

When evaluating the opinion evidence, the ALJ granted some weight to the state medical consultants, who found that Plaintiff could perform light work with limited postural activities, handling, fingering, and feeling. (R. 17.) The ALJ stated that the light work finding was "supported by [Plaintiff's] ease of movement during the hearing," but that the postural limitations were not supported by the record. (R. 17.) The ALJ granted little weight to Dr. Wilchfort's statement that he "did not see a reason why [Plaintiff] is unable to work," finding it to be a "vague assertion." (R. 17.) The ALJ also granted little weight to a third party report from Plaintiff's friend that detailed limitations in Plaintiff's lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, and stair climbing, stating that it was contradicted by the record. (R. 17.)

Evaluating Plaintiff's subjective complaints, the ALJ found that, although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. 17.) For example, despite Plaintiff's testimony that she has difficulty walking more than 12 feet before stopping, the ALJ found the record showed "unassisted walking and full or

near full strength." (R. 17.) The ALJ noted as significant that Plaintiff "presented as intelligent and appeared to move well during the hearing." (R. 17.) He stated that Plaintiff "is still able to perform activities of daily living" based on her testimony that she "prepares simple meals, does laundry, and does yard work twice per year, as well as negotiating steps inside and outside her home daily." (R. 16.)

At step four, the ALJ found that Plaintiff "is capable of performing past relevant work as a greeter, slot machine attendant, and administrative clerk." (R. 17.) Due to this finding, the ALJ concluded that Plaintiff was not disabled. (R. 18.)

## IV. DISCUSSION

Plaintiff makes a number of arguments, including that: the ALJ erred in finding Plaintiff's upper and lower extremity impairments non-severe; the ALJ erred in the weight he assigned to the medical evidence in the record; the ALJ erred in rejecting Plaintiff's subjective complaints; the ALJ erred in formulating an RFC of "full range of light work" without considering Plaintiff's limitations; the ALJ erred in concluding that Plaintiff could return to her past relevant work; and the ALJ erred in failing to evaluate Plaintiff's RFC at step five.

As discussed below, because remand is appropriate based on the ALJ's failure to address conflicting medical evidence in the record, the Court declines to substantively address all of Plaintiff's alternate arguments for remand.

### A. Whether the ALJ failed to address conflicting medical evidence in the record

Plaintiff argues that the ALJ ignored medical evidence in the record from the doctors she regularly saw—including Drs. Roeske, Yangala, and Hussain—and instead gave inappropriate weight to the opinion of Dr. Wilchfort, which the ALJ cites as support several times in his opinion. (Pl. Br. at 19.) Defendant argues that, although Dr. Wilchfort is the only doctor that the ALJ

11

identified by name in his opinion, the ALJ nonetheless properly demonstrated that he evaluated all medical evidence in the record by discussing the other doctors' findings without mentioning them by name. (Doc. 22 ("Def. Br.") at 13.)

Defendant correctly argues that an "ALJ need not address a physician's report by name if the ALJ, when appropriate, includes 'a statement of subordinate factual foundations on which the ultimate factual conclusions are based, so a reviewing court may know the basis for the decision.'" *Millan v. Comm'r of Soc. Sec.*, Civ. No. 09-1065, 2010 WL 1372421, at *10 (D.N.J. Mar. 31, 2010) (quoting *Arroyo v. Comm'r of Soc. Sec.*, 82 F. App'x. 765, 768 (3d Cir. 2003)). While the ALJ did not mention any other doctors by name, his opinion does cite directly to their treatment notes when discussing the medical evidence. (R. 16–17.) However, the Court finds that the ALJ nonetheless erred in his treatment of medical evidence in the record: although the ALJ did not entirely ignore treatment notes from Plaintiff's providers, he selectively cited portions of these notes, rather than addressing the conflicting evidence within these records.

The most significant example of this is the ALJ's selective quoting of Dr. Yangala's May 2017 medical treatment notes. (R. 17.) The ALJ wrote that, in "May 2017, [Plaintiff] had an ataxic gait and some swelling, but [Plaintiff] had normal motor bulk, strength and tone, equal reflexes and intact coordination." (R. 17.) He adds that the "treating physician"—Dr. Yangala—felt that Plaintiff's cervical cord lesion "had mostly resolved and left some residual deficits." (R. 17.) The ALJ's overview of Dr. Yangala's May 2017 notes stops here, and thus characterizes Plaintiff as significantly improved and doing well, save for "some residual deficits." (R. 17.) However, this characterization ignores a significant finding in Dr. Yangala's notes: "[Plaintiff] continues to have significant neurological deficits with gait ataxia and disabling paresthesias." (R. 580.) This

sentence directly follows the one the ALJ chose to quote—that Plaintiff's cervical cord lesion "had mostly resolved"—and conflicts sharply with the ALJ's characterization of Dr. Yangala's notes.

While failing entirely to address Dr. Yangela's finding that Plaintiff had "significant neurological deficits" and "disabling parasthesias," the ALJ cites to Dr. Wilchfort's November 2015 evaluation to conclude that Plaintiff had mostly normal sensation in her hands, full range of motion, and full or near full strength. (R. 16–17.) These two evaluations are at odds with one another, but the ALJ does not address or resolve this conflict in his opinion. Instead, the ALJ's overarching discussion of the medical evidence presents a trend of upward improvement with Plaintiff's myelitis and hand impairments. (R. 16–17.) In presenting this timeline, the ALJ's opinion paradoxically ignores contradictory notes from the most recent medical evidence in the record—Dr. Yangala's May 2017 notes—and focuses most heavily on Dr. Wilchfort's examination from 18 months earlier.

The ALJ also fails to address several other statements in the record that contradict an upward trajectory in Plaintiff's condition. For example, on January 12, 2015, Dr. Timms noted Plaintiff's symptoms of tingling and numbness, and Dr. Premachandra found that Plaintiff's symptoms were worsening, and that she had diminished grip strength and decreased sensation in her arms from fingers to elbows. (R. 428–431.) Similarly, on May 11, 2015, Dr. Premachandra again noted that Plaintiff's grip strength was diminished, that she had decreased sensation in her arms from fingers to elbows, and that her symptoms had not improved. (R. 469–470.) While the ALJ's overview of the medical record notes that Plaintiff "reported a history of cervical myelitis" in January 2015, he states only that the myelitis was resolving and does not indicate that he considered these reports of Plaintiff's continued or worsening symptoms. (R. 16.)

An ALJ "may weigh the credibility of the evidence," however, if there is conflicting evidence in the record, he must address it. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (finding remand appropriate where the ALJ "failed to mention or refute some of the contradictory medical evidence before him"). Here, the ALJ was not free to simply ignore those portions of Dr. Yangala's treatment notes that contradicted Dr. Wilchfort's opinion and reference only the parts that were consistent with Dr. Wilchfort's findings.

Because the ALJ failed to fully weigh and consider all of the medical evidence in the record, the ALJ's decision is not supported by substantial evidence, and remand is appropriate. *See Karge v. Comm'r of Soc. Sec.*, Civ. No. 17-4999, 2018 WL 6077981, at *5 (D.N.J. Nov. 21, 2018) (explaining that, when an ALJ fails "to fully identify, weigh, and consider all of the medical evidence of record," then "the Commissioner's finding is not supported by substantial evidence, and the Court will remand for resolution") (citing *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001)).

### B. Whether the ALJ erred in finding Plaintiff's extremity impairments non-severe

Plaintiff argues that the ALJ failed to consider relevant evidence in the record when finding that her upper and lower extremity impairments were non-severe. (Pl. Br. at 16.) Alternatively, she argues that even if the non-severe finding was proper, the ALJ failed to include Plaintiff's limitations when assessing her RFC, as the "light work" RFC failed to take into account Plaintiff's limited use of her hands or her issues with balance, standing, and walking. (*Id*. at 23.)

Defendant argues that the record shows that Plaintiff's upper and lower extremity impairments "were a result of her cervical spine lesion (cervical myelitis) or degenerative disc disease, both of which were assessed as severe impairments." (Def. Br. at 12.) Defendant also argues that, even if Plaintiff's extremity impairments should have been separately listed as severe

impairments, this is a harmless error because the ALJ considered Plaintiff's extremity impairments when formulating the RFC. (Def. Br. at 12.)

The record supports Defendant's contention that Plaintiff's extremity impairments stemmed from one or more of the impairments that the ALJ did list as severe: "residuals of cervical spine lesion, degenerative disc disease, diabetes, and obesity." (R. 12.) Dr. Yangala found that Plaintiff's extremity impairments were residual effects of her lesion, or myelitis. (R. 584.) Dr. Hussain similarly found that Plaintiff's "increased pain in her hands and weakness [ ] is related to her cervical myelitis." (R. 473.) Plaintiff does not point to anything in the record supporting her argument that her extremity impairments were not properly included within the impairments the ALJ did find to be severe. The section of the record that Plaintiff seeks to use as support in fact contradicts her argument, as she cites to Dr. Hussain's finding that her extremity impairments are likely due to transverse myelitis. (Pl. Br. at 21; R. 450.)

Thus, the Court finds that the ALJ did not err by not separately listing Plaintiff's extremity impairments as severe impairments. On remand, however, when assessing the conflicting medical evidence mentioned above, the ALJ could make different findings as to Plaintiff's RFC. Accordingly, the Court declines to address Plaintiff's argument that the present RFC failed to properly account for Plaintiff's extremity impairments, as this RFC could change on remand.

### C. Whether the ALJ erred in rejecting Plaintiff's subjective complaints

Plaintiff argues that the ALJ erred by rejecting her subjective complaints as to how her impairments affected her ability to move and to use her hands. (Pl. Br. at 27.) She argues that the ALJ improperly based his rejection of her subjective complaints off of her appearance and movement at the hearing. (*Id.* at 33.) She contends that, as this hearing was conducted remotely through video and the ALJ never actually saw her in-person, he could not have properly assessed

the impact that her impairments had on her range of motion and overall movement. (*Id.*) She also argues that the ALJ improperly rejected medical evidence in the record based on a mischaracterization of her testimony. (*Id.* at 28.) Specifically, she takes issue with the ALJ's characterization that she does yard work twice a year, when at the hearing she testified that she only clips rose bushes twice a year, as she does not have a "real yard," and that her ex-boyfriend did any other necessary yard work. (Pl. Br. at 24–25; R. 17, 75.)

Defendant argues in response that substantial evidence supports the ALJ's assessment of Plaintiff's subjective complaints, pointing to Dr. Wilchfort's finding that Plaintiff could walk unassisted and was at full or near full strength, and to records showing that physical therapy lessened Plaintiff's pain. (Def. Br. at 13.)

"The ALJ, as the finder of fact, is given great discretion in making credibility findings." *McElroy v. Comm'r of Soc. Sec.*, 2015 WL 8784604, at *9 (W.D. Pa. Dec. 15, 2015) (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983). "Although allegations of pain and other subjective symptoms must be consistent with objective medical evidence, the ALJ must still explain why he is rejecting the testimony." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000). Additionally, "[w]here an applicant for disability benefits complains of pain, that testimony may not be discredited on the basis of the ALJ's own medical judgment; it must be discredited by contradictory medical evidence." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 481 (3d Cir. 2007).

In rejecting Plaintiff's subjective complaints, the ALJ stated that they were inconsistent with the record, and that they were contradicted by the fact that Plaintiff appeared to "move well" during the video hearing. (R. 17.) Considering that the ALJ failed to address the conflicting medical evidence discussed above that would support Plaintiff's subjective complaints, the ALJ's

16

rejection of Plaintiff's subjective complaints is improper. On remand, the ALJ must address the conflicting evidence in the record when considering Plaintiff's subjective complaints, rather than selectively pull from the record. *See Borrelli v. Comm'r of Soc. Sec.*, Civ. No. 18-13657, 2019 WL 4727925, at *5 (D.N.J. Sept. 27, 2019) (remanding where an ALJ discounted a plaintiff's subjective reports of pain based on a doctor's note stating the condition was "controlled," and failed to address the evidence in the record supporting the plaintiff's reports).

## V.   CONCLUSION

For the foregoing reasons, this case is REMANDED for further administrative proceedings consistent with this Opinion. *See Burnett*, 220 F.3d at 126 (instructing that, in determining the plaintiff's residual functional capacity on remand, "the ALJ must make specific findings as to all of the pertinent medical evidence, reconciling conflicts and, if rejecting particular evidence, explaining why"). An accompanying Order shall issue.


Dated:      5/4/2020                                  /s Robert B. Kugler
                                                      ROBERT B. KUGLER
                                                      United States District Judge